IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ELOUISE CLARK, | CIVIL ACTION NO. 9:13-0954-DCN-BM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN,[1] COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein she was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[2] on February 2, 2010, alleging disability beginning September 1, 2007 due to

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this lawsuit.

[2] Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir.
(continued...)



depression, arthritis, high blood pressure, high cholesterol, diabetes, acid reflux, low potassium, osteoarthritis, atopic dermatitis, breathing problems, hot flashes, muscle spasms and itching all over. (R.pp. 115-116, 117-123, 148, 153). Plaintiff's claims were denied both initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on November 18, 2011. (R.pp. 23-59). The ALJ thereafter denied Plaintiff's claims in a decision issued January 20, 2012. (R.pp. 11-22). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-3).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for further consideration, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

---

[2](...continued)
1999)[Discussing the difference between DIB and SSI benefits].



evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)).

The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty-four (44) years old when she alleges she became disabled, has a tenth grade education with past relevant work experience as a home health care giver, cashier, and clothes sorter. (R.pp. 21, 31, 34-35, 117). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in this case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[3] of arthritis, fibromyalgia, depression and anxiety, thereby rendering her unable to perform any of her past relevant work, she nevertheless retained the

---

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).



residual functional capacity (RFC) to perform a restricted range of sedentary work,[4] and was therefore not entitled to disability benefits. (R.pp. 14, 18, 21-22).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly weighing and evaluating the opinion of consultative examiner Dr. Robert Phillips concerning the extent and limiting effects of her mental impairment, and by improperly finding that Plaintiff had the RFC to perform work on a regular and continuing basis in light of her documented mental impairment.[5] However, after careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed. Laws, 368 F.2d 640 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

As noted by the ALJ in her decision, Plaintiff's primary physician was Dr. Sandy Jones with the Celia Saxon Health Center. On December 6, 2007, Dr. Jones found Plaintiff's mental status to be "normal". (R.p. 260). Dr. Jones continued to see Plaintiff thereafter at regular intervals through the summer of 2008, with Plaintiff's mental status on all of these visits always being noted as "normal". There is no indication in any of these medical records that Plaintiff was having any problems with depression or anxiety. (R.pp. 254-259). Indeed, it was not until September 17, 2008 that Dr. Jones' office notes reflect for the first time that Plaintiff complained about "feeling depressed

---

[4]Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

[5]While the ALJ also found that Plaintiff's physical impairments were not of a disabling severity, Plaintiff focuses her claims of error on the ALJ's findings with respect to her mental impairment.



4

a lot recently".[6] Plaintiff told Dr. Jones that she could not pinpoint exactly what was causing her depression; rather, she just worried about everyday things. However, Dr. Jones again noted Plaintiff's mental status as being normal (alert and oriented X 3). She started Plaintiff on Zoloft. (R.p. 252). Plaintiff returned to see Dr. Jones on December 4, 2008 for a variety of complaints. Dr. Jones' office notes do not reflect that Plaintiff mentioned any problems with depression at that time, and she again noted Plaintiff's mental status as being "normal". Her Zoloft prescription was continued, with Dr. Jones also indicating that she would try to get Plaintiff on Cymbalta per a prescription assistance program. (R.p. 248). There is nothing to indicate a disabling mental condition in these medical records. See Craig v. Chater, 76 F.3d 589-590 (4th Cir. 1996)[noting importance of treating physician opinions]; see also Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual functional limitations].

In addition to Dr. Jones' treatment records, the ALJ also noted that Plaintiff had a consultative disability examination performed by Dr. Mitchell Hegquist on February 18, 2009 on referral from the South Carolina Vocational Rehabilitation Department. Plaintiff complained to Dr. Hegquist of various medical problems of a physical nature, as well as depression, and Dr. Hegquist noted the Plaintiff was being seen by her primary care physician (Dr. Jones) for her complaints every two to three months. With respect to her mental condition, Plaintiff told Dr. Hegquist that she had begun having depression approximately three years previous (even though Dr. Jones' medical records had not noted this complaint until September 2008, only five months earlier), and that her current medications helped "sometimes" but made her drowsy. However, she had never been evaluated by a mental health specialist or hospitalized for a mental health disease, and on examination Dr.

---

[6]This was one year *after* Plaintiff alleges she had become disabled.



Hegquist found Plaintiff to be alert and oriented X 3, her memory was grossly intact, and her thought processes, behavior, and intelligence level were all within normal limits. See Richardson v Perales, 402, U.S. 389, 408 (1971)[assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability]. He suggested Plaintiff obtain further psychiatric evaluation, and opined that Plaintiff appeared competent to handle her own personal relationships and monetary funds. See generally, (R.pp. 14-15, 261-265).

Plaintiff then went to see Dr. Phillips, a psychologist, on March 30, 2009 for an evaluation. Plaintiff told Dr. Phillips that she suffered from depression in addition to her various physical ailments, and said that she was "forgetful at times and [had] difficulty concentrating." Plaintiff told Dr. Phillips that her problems had begun "seven years ago". Plaintiff also told Dr. Phillips that she often thought about her deceased mother, which made her depressed, although she had never seen a therapist for her emotional problems. Plaintiff indicated that when she got up in the morning she took her medication and fixed breakfast, and that if she had a "client" that day (Plaintiff was continuing to work as a care giver), she would go to work for three hours and then come home. Plaintiff reported that she worked two to three times a week for three hours a day in this profession. Dr. Phillips observed Plaintiff to be anxious and tense, but believed she was "open and helpful" and found her to be "cooperative and most likely truthful". On examination Plaintiff was well oriented as to time, place, and person, and while her attention span was less than normal, her long term memory was fair. Plaintiff reported that she usually felt depressed, stressed, and anxious, and suffered from inconsistent sleep, but had no suicidal thoughts. Plaintiff's WRAT[7] scores reflected

---

[7]Wide Range Achievement Test is a test that measures the basic academic skills of word reading, sentence comprehension, spelling, and math computation. McGraw-Hill Concise Dictionary of Modern Medicine © 2002.



a fairly good ability in math and reading, typical of some high school graduates (although Plaintiff had not graduated from high school), while Hooper Visual Organization tests indicated that Plaintiff had not suffered from any stroke or brain damage that would interfere with her visual integration skills. A Profile of Mood States indicated that Plaintiff was experiencing moderate to high levels of fatigue, confusion, and anxiety, with Plaintiff reporting that she felt "down and anxious about her future" and was also "restless and tired". Dr. Phillips described Plaintiff as a woman who appeared to be "burning out", and although her thinking was "fairly clear" she did have a "strong underlying sense of confusion with a moderate level of tension." He also stated that she tended to "space out," which would make her less productive. Dr. Phillips believed that Plaintiff could do some continual work but would not be reliable in her performance or attendance due to her history of being somewhat unstable in her emotional reactions. She also did not do well when under stress. She was able to understand fairly complex instructions, but Dr. Phillips found her self-esteem to be inconsistent and that she experienced periods of depression when she was unable to do the things that she believed she would like to do. He assessed her with generalized anxiety disorder, major depressive disorder, and assigned her a GAF of 49.[8] (R.pp. 15, 266-269).

       Plaintiff returned to the Celia Saxon Health Center on approximately September 23, 2009 (date is partially obscured on copy), complaining of several "chronic problems". Her various prescriptions were refilled. While depression was listed as one of her diagnoses, her mental status was again noted as being "normal". (R.p. 298). The record reflects that Plaintiff was subsequently

---

[8]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.)'". Boyd v. Apfel, 239 F.3d 698, 702 (5th Cir. 2001).

7



seen at Palmetto Richland Memorial Hospital on December 8, 2009 complaining of a cough, a sore throat, and a low grade fever. On examination Plaintiff did not appear to be in distress, and she was diagnosed with an upper respiratory infection. (R.pp. 280-282). Plaintiff then returned to see Dr. Jones two days later, who noted that she was "feeling much better". Plaintiff was continued on her medications, including Cymbalta. Depression or anxiety were not listed among her assessed conditions on that date, while her mental status was again noted as being normal. (R.p. 294). When Dr. Jones saw Plaintiff again on February 2, 2010 for multiple complaints, including throbbing in her temples and sinus congestion, Plaintiff stated that Cymbalta was working well for her depression. No assessment was assigned or noted for any mental problems, and her mental status was listed as being normal. (R.p. 292). See Craig, 76 F.3d at 589-590 [noting importance of treating physician opinions].

On April 13, 2010, state agency physician Dr. Philip Michels reviewed Plaintiff's medical history and completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment in which he opined that Plaintiff's major depressive disorder and generalized anxiety disorder resulted in only a mild restriction in Plaintiff activities of daily living and social functioning, a moderate restriction with respect to concentration, persistence or pace, with no episodes of decompensation. Dr. Michels opined that, while the overall evidence indicated Plaintiff had a severe mental condition, she did not have a listing level impairment that would preclude her from performing simple tasks in a work setting with minimal work with the general public. He further concluded that while Plaintiff may have difficulty sustaining her concentration and pace on complex tasks and detailed instructions, she should be able to attend to and perform simple tasks without special supervision, and could attend work regularly, only missing an occasional day due to her mental condition. He believed Plaintiff could make simple work related decisions and

8



occupational adjustments, adhere to basic standards for hygiene and behavior, protect herself from normal work place safety hazards and use public transportation, and would relate appropriately to supervisors and coworkers but would be better suited for a job that did not require regular work with the general public. (R.pp. 303-319). See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

Plaintiff returned to the Celia Saxon Health Center on May 11, 2010 for a follow up office visit, where she was evaluated by Nurse Practitioner Susan Thrower. Plaintiff was noted to be taking one Cymbalta tablet daily by mouth for depression; she denied feeling depressed, sadness, or having any crying spells; and on examination N.P. Thrower found her mental status to be as follows: "Negative Findings: no depression, no anxiety, no agitation". (R.pp. 338, 340-341). See 20 C.F.R. § 404.1513(d)(1), SSR 06-03p [discussing weight to be given to opinions of physician's assistants].

A second state agency physician, Dr. Edward Waller, reviewed Plaintiff's medical records on September 7, 2010 and completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment in which he reached the same general conclusions as had Dr. Michels, except that Dr. Waller opined that Plaintiff's mental impairments would result in moderate difficulty in maintaining social functioning, rather than only a mild limitation as had been found by Dr. Michels. Dr. Waller referenced the findings of Dr. Philips, but also noted that Plaintiff's treating physician had cited improvement in her condition. He opined that while Plaintiff's symptoms would likely limit her in the workplace, she should nevertheless be able to work performing simple tasks with minimal interaction with the general public. (R.pp. 371-387). Smith, 795 F.2d at 345 [opinion of a non-examining physician can constitute substantial evidence to support the decision of



the Commissioner].

The ALJ reviewed this medical record together with Plaintiff's subjective evidence and testimony and determined that Plaintiff's mental impairment resulted in a mild restriction in her activities of daily living, and moderate difficulties in social functioning and with respect to concentration, persistence or pace. (R.p. 17). As a result of these limitations, the ALJ limited Plaintiff to work involving only simple, routine tasks with no interaction with the public. (R.p. 18). The records and opinions cited hereinabove, supra, provide substantial evidence to support these findings and conclusions. Hays, 907 F.2d at 1456 ["If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is 'substantial evidence'"]. While Plaintiff complains that Dr. Philips found that she would not be reliable in her performance or attendance due to her mental health issues, and that there is not substantial evidence in the record to justify the ALJ discarding Dr. Philips' opinion, the ALJ concluded that the objective findings and treatment notes of Plaintiff's treating and examining sources were consistent with the RFC assigned in the decision, as were the opinions of the state agency medical consultants, which are consistent with the ALJ's RFC finding and which the ALJ assigned great weight. The undersigned can discern no reversible error in the ALJ's findings and conclusions.

The evidence reflects that Plaintiff's treating physician, Dr. Jones, consistently found through regular examinations over an extended period of time that Plaintiff's depression was well controlled with Cymbalta and that Plaintiff had few complaints of symptoms from her depression and anxiety and maintained a normal mental status throughout the time period at issue. (R.pp. 14-15); see generally (R.pp. 248-260, 292-298). Craig, 76 F.3d at 589-590[noting importance of treating physician opinions]; Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)[conservative treatment inconsistent with allegations of disability]; see also Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.



1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss].  The ALJ further noted that Dr. Hegquist had found on examination that Plaintiff's mental status was alert and oriented X 3 with a grossly intact memory, and that her thought processes, behavior, and intelligence level within normal limits, while the state agency physicians had determined that Plaintiff had no more than a mild restriction in her activities of daily living and moderate difficulties and social functioning and with regard to concentration, persistence or pace.  (R.pp. 14, 17); see generally (R.pp. 261-265, 303-319, 371-387). See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Smith, 795 F.2d at 345 [opinion of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner]; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)[court scrutinizes the record as a whole to determine whether the conclusions reached are rational].  In reaching this conclusion, the ALJ also noted Plaintiff's work history and function reports showing that Plaintiff could engage in a variety of activities of daily living, was able to perform activities that involved at least some degree of concentration and persistence such as reading, driving and shopping, and that she had even been able to work part-time notwithstanding her condition. (R.pp. 17, 162, 179-180).  Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating impairments where she engaged in a variety of activities].  This evidence provides substantial support for the ALJ's findings and conclusions.

    In her brief, Plaintiff focuses on the ALJ having noted that Plaintiff's earnings record showed that she had been consistently reliable in her part-time work attendance for a number of years, and that this performance was inconsistent with Dr. Philips' opinion that Plaintiff would not be reliable in her performance or attendance. (R.p. 15).  Plaintiff complains that it was reversible error



for the ALJ to find that she had the RFC for full-time work because she was able to work part-time. However, the ALJ did not find that, because Plaintiff consistently participated in and attended part-time work, this meant she could perform full-time work. Rather, as part of her overall review of the record and evidence in this case, the ALJ was simply, and quite properly, noting an inconsistency between Dr. Philips' conclusion based on his one time evaluation of the Plaintiff that she would not be reliable in her performance or attendance with the fact that Plaintiff was and continued to work part-time on a regular basis two to three times a week for three hours a day. In determining Plaintiff's overall RFC, however, the ALJ cited the findings of Plaintiff's treating physician, another consultative physician, as well as the opinions of two state agency physicians, none of whose records and opinions evidenced that Plaintiff's mental impairment was of a disabling severity.

Indeed, the only medical evidence cited by the Plaintiff to support her claim that her mental impairment was of a disabling severity is the opinion of Dr. Philips. While Plaintiff obviously wanted the ALJ to accept Dr. Philips' conclusion as opposed to the contrary medical evidence in the record, the ALJ was not required to do so. Rather, it is the job of the ALJ to consider *all of the evidence* and resolve any conflicts in that evidence in determining the extent of a claimant's impairments, and the ALJ's findings in this regard must be upheld by this Court as long as there is substantial evidence to support the ALJ's conclusion. See Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)["The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"]. That is what the ALJ did in this case. See also Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) ["What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]; Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir.



1991)[ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record].

Based on the substantial medical evidence in the record reflecting that Plaintiff did not have a mental impairment of a disabling severity, there is no reversible error in the ALJ's findings and conclusions. Plaintiff's argument that the ALJ having noted that Plaintiff's ability to regularly and consistently perform part-time work contradicted Dr. Philips' finding that Plaintiff would not be reliable in her performance and attendance constituted reversible error is without merit, as that individual observation was not the basis for the decision. Rather, the decision was based on the ALJ's review of the entire record. Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985) [ALJ's discussion of evidence need only be sufficient to "assure [the court] that [he] considered the important evidence . . . [and to enable the court] to trace the path of [his] reasoning"]; see Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994)[In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]. Plaintiff's contention of error in this separate finding by the ALJ, or that the ALJ should otherwise have gone into or set forth a more detailed or comprehensive discussion for how she reached her decision, is without merit. See Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1999)["No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"]; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ["An arguable deficiency in opinion -writing technique is not a sufficient reason for setting aside an administrative finding where...the deficiency probably had no practical effect on the outcome of the case"], quoting, Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987).

Finally, with respect to Plaintiff's complaint that she could not perform full-time work



13

with her RFC, the ALJ's limitation of her to simple, routine tasks with no interaction with the public due to her depression and anxiety sufficiently addressed the limitations caused by her condition. (R.p. 20). Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]; Hyser v. Astrue, No. 11-102, 2012 WL 951468 at * 6 (N.D.Ind. Mar. 20, 2012)[Finding limitation to jobs "involving only occasional contact with public and co-workers" accounted for moderate social functioning]; McDonald v. Astrue, 293 Fed. App'x 941, 946-47 (3d Cir. 2008) [noting that the ALJ properly accounted for his finding that the claimant had moderate limitations in concentration by limiting him to simple, routine tasks]. The ALJ then asked the Vocational Expert at the hearing whether someone with these limitations could perform work activity, in response to which the VE identified several jobs that Plaintiff could perform with these limitations. (R.p. 54). Cf. Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress]; Menkes v. Astrue, 262 Fed. App'x 410, 412 (3d Cir. 2008) ["Having previously acknowledged that [the claimant] suffered moderate limitations in concentration, persistence and pace, the ALJ [properly] accounted for these mental limitations in the hypothetical question by restricting the type of work to 'simple routine tasks.'"];see also Sensing v. Astrue, No. 10-3084, 2012 WL 1016581 at * 7 (D.S.C. Mar. 26, 2012).

The ALJ's hypothetical to the VE accounted for all credibly established mental findings in the record and as determined by the ALJ's RFC finding, and the ALJ's reliance on this testimony to find that Plaintiff could perform work with these limitations is therefore not grounds for



a reversal of the decision.  <u>Lee</u>, 945 F.2d at 692 [ALJ not required to include limitations or restrictions in his decision that he finds are not supported by the record].

## **Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision.  <u>Blalock</u>, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period.  Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 24, 2014
Charleston, South Carolina



15

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

16

